**IN THE UNITED STATES DISTRICT COUR**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **MASHELIA GIBSON,**<br>**14671 Cambridge Circle**<br>**Laurel, Maryland 20707**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**MARYLAND MOTOR VEHICLE**<br>**ADMINISTRATION,**<br>**6601 Ritchie Highway, N.E.**<br>**Glen Burnie, Maryland 21062**<br><br>**SERVE:  Christine E. Nizer,**<br>             **Administrator**<br>             **6601 Ritchie Highway, N.E.**<br>             **Glen Burnie, Maryland 21202-3601**<br><br>**SERVE:  Brian E. Frosh,**<br>             **Attorney General of Maryland**<br>             **200 St Paul Place**<br>             **Baltimore, MD 21202**<br><br>             **Defendant.** | **Civil Action No: _____**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL COMPLAINT

**NOW COMES** Plaintiff, Mashelia Gibson, by and through her undersigned counsel, and, pursuant to Fed. R. Civ. P. 8 and 10, files this Civil Complaint for damages set forth as follows:

**JURISDICTION AND VENUE**

1.      This Complaint is authorized and instituted pursuant to §§ 703 and 704 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3, and, as this Complaint asserts claims arising under the laws of the United States, this Court has original jurisdiction over those claims. Further, Plaintiff has alleged claims arising under state law, under the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann. State Gov't. Art. §§ 20-606(a) and (f), and, since those

1

claims are factually inter-related with Plaintiff's claims arising under federal law, this Court should assert its pendent jurisdiction over such claims.

2.      Venue is proper in this judicial district as the claims alleged in this Complaint occurred within this judicial district and Defendant is a government employer that is subject to the jurisdiction of this Court.

3.      Prior to bringing this action, Plaintiff timely filed two administrative charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights ("MCCR"). Charge 1 was filed on December 6, 2018 and was assigned Charge No. 531-2019-00710.  Charge 2 was filed on July 29, 2019, and was assigned Charge No, 531-2019-03184.   On August 8, 2020, Plaintiff received a Dismissal and Notice of Rights letter from the EEOC ("DNOR"). This action is being brought within two years of the alleged unlawful employment practices described in this Complaint.

**PARTIES**

4.      At all times relevant to this Complaint, Plaintiff, an African American female, was a "person", as defined by Title VII and the MFEPA and a resident of Prince George's County and the State of Maryland.

5.      Defendant Motor Vehicle Administration ("MVA") is a unit and modal administration within the State of Maryland Department of Transportation.  At all times relevant to this Complaint, MVA had the responsibility and the authority to ensure that all vehicles in the State of Maryland are safe and road-ready and that all drivers of motor vehicles properly are licensed.  Defendant is an "employer" as defined by Title VII and the MFEPA.

2

## FACTS COMMON TO ALL COUNTS

6.      From January 4, 2017, until her termination on August 13, 2019, Plaintiff was employed by Defendant as a Vehicle Compliance Agent ("VCA") I.  In June 2018, Plaintiff was promoted to a VCA II position.  At all times relevant to this Complaint, Plaintiff was rated as at least a satisfactory performer.

7.      As a VCA I and II, Plaintiff worked in the MVA's VEIP/Vehicle Inspection Division ("VID"). Her principal duties involved conducting Type B inspections of school buses to ensure their safe operating condition and their fitness for transporting students.  Plaintiff was responsible for ensuring that school buses complied with federal and state motor vehicle laws, rules and regulations.  She regularly conducted visual inspections, processing waivers and applying proper penalties for non-complying vehicles. Type B inspections are conducted in the presence of the school bus operator's representatives, as well as representatives from the local school boards.

8.      Plaintiff's immediate supervisor was William Chafin (Caucasian male).  Her second-level supervisor was Michael Groff (Caucasian male), Section Manager – VEIP/Vehicle Inspection Division. Groff's section is responsible for annually inspecting all school buses in the State of Maryland, including scheduled inspections and random spot inspections.

9.      During Plaintiff's tenure in Groff's section, she was the only female VCA.  There were seven (7) other VCAs; two were African American, Lawrence Washington and Ken Garnett, and five were Caucasian males: Alfred Morgan, Erik Faatz, Steve Brown, Jeff Henieck and Saigoto Merennge.

10.     Groff told Plaintiff that she was the "first and only female that he would hire."  He also laughed at, condoned and refused to censure Caucasian male VCAs Alfred Morgan and Erik Faatz, who commented that Plaintiff was "dumb," and that she needed more training.  Neither Groff nor any other supervisor or manager told Plaintiff that she required more training to perform her job.  Plaintiff

reported those comments to Groff, but he took no remedial action.

11.     Groff made racially insensitive comments that, when conducting inspections, Plaintiff should not ride with another African American VCA because it "looks strange."  He laughed at, condoned and refused to censure a VCA, Alfred Morgan, when he told Plaintiff during a staff meeting that "you need to stop complaining about everything because, in the history of the department, have had another black employee and if anyone deserved to get shot, it was him."  Plaintiff reported those comments to Groff.

12.     Neither Groff nor any other MVA manager took effective remedial actions concerning the racial and misogynistic comments uttered by Plaintiff's co-workers.

13.     Groff harassed and badgered Plaintiff about her lunch hours, caustically and paternalistically telling her that "you will eat lunch when I tell you to eat."  Similar comments were never made by Groff to Plaintiff's Caucasian male co-workers.  Groff also criticized Plaintiff's travel plans when she traveled overnight using her personal time to drive to Salisbury, Maryland to inspect school buses the next business day.  Groff never directed similar comments to Caucasian male VCAs.  Unlike Caucasian male VCAs, Groff had other VCAs monitor Plaintiff's restroom usage, lunch hours and her activities during inspections.

14.     In conducting Type B visits, Plaintiff was required to travel, in a state vehicle, throughout the State of Maryland to inspect school buses, often traveling to rural areas, such as Western Maryland, areas north and west of Baltimore and its environs, as well as the Eastern Shore to the contractors'/operators' school bus lots. Usually, Plaintiff traveled alone, although occasionally she would be accompanied by a fellow VCA.

15.     On March 27, 2018, when Plaintiff was scheduled to travel for Type B inspections with an African American VCA, Lawrence Washington, Groff cautioned her that she should not ride in a vehicle with Washington because it would look strange.  The next day, Groff directed to travel to the

4

Eastern Shore with Washington and reminded Plaintiff that, despite his previous day's comment about the strangeness of two African American VCAs traveling together, he was the boss, not Plaintiff.

16.     Plaintiff also experienced harassment because of her race and gender while conducting official MVA business.  On January 18, 2018, while driving in Calvert County on MVA business, a driver in green pickup truck cut her off and screamed "pull over you black bitch," and "fuck you."  After he cut her off, the pickup truck's driver endangered Plaintiff by blowing black diesel exhaust smoke onto Plaintiff's windshield, obscuring her vision.  Plaintiff reported that dangerous encounter to Groff, but he was indifferent to Plaintiff's complaint.

17.     One inspection site visited on March 28, 2018, was Gilbert Bus Company, located in North East, Cecil County, Maryland.  When Washington and Plaintiff arrived at the site, the owner/state contractor, Joseph Gilbert (Caucasian male), drove his vehicle in menacing "donuts" around their state vehicle, shouting at them to "move that fucking truck off my property!" When Plaintiff and Washington showed Gilbert their state ID cards, Gilbert responded that "I only see two black people wearing all black."  He told Plaintiff and Washington that "around here we shoot first, ask questions later."

18.     When Plaintiff attempted to discuss the inspections to be conducted, Gilbert belligerently asked her what she was afraid of and pulled out a 6-foot long bear Taser.  Gilbert pointed the weapon at Washington and again asked Plaintiff what she was afraid of.  After Plaintiff politely asked Gilbert to put away the bear Taser, Gilbert released his aggressive guard dog and took out a large snake.

19.      Gilbert's actions described in ¶¶ 17-18 above placed both Washington and Plaintiff in fear of an immediate harmful and offensive touching of their persons.  The actions described in ¶¶ 17-18 above were witnessed by representatives of the Cecil County Board of Education.

20.     Plaintiff called Groff to report Gilbert's outrageous threats and assaultive behavior.  Groff was indifferent to Plaintiff's complaint, telling her that "Gilbert is not used to you yet."

21.     Also on March 28, 2018, Plaintiff and Washington traveled to Dvorak's Garage, LLC, located in Elkton, Cecil County, Maryland.  When Plaintiff got out of the state vehicle, the owner, Robert Dvorak (Caucasian male), released his mastiff guard dog, weighing more than 125 pounds.  It lunged at Plaintiff, causing her to flee back to her vehicle for safety.  Plaintiff and Washington were thwarted from doing their investigation.  Both Plaintiff and Washington were placed in fear of an imminent harmful or offensive touching of their persons.  She reported Dvorak's actions to Groff, who was indifferent to the assault experienced by Plaintiff and Washington.

22.     No effective remedial action was taken by Groff subsequent to Plaintiff's reports.   The harassment and abusive conduct directed at Plaintiff by owners/state-contractors continued.  In June 2018, a Caucasian male owner/state-contractor, who permitted his drivers to drive school buses adorned with Confederate flags, tore up a citation issued by Plaintiff, calling her a "nappy-headed nigger." Plaintiff reported the owner's comments to Groff, but he took no effective remedial action.

23.     On August 27, 2018, Plaintiff and Washington arrived for an inspection at the Carroll County Public Schools ("CCPS") facility in Westminster, Carroll County, Maryland.  A school official, who identified herself as "Kim," greeted them rudely, telling them that "no one told us that you were black." Plaintiff reported the CCPS's representative's comments to Groff, but he took no effective remedial action.

24.     On September 26, 2018, at Moxley Bus Company, in Bel Air, Harford County, Maryland, Plaintiff asked a mechanic (Caucasian male) for permission to use a rest room.  The mechanic, while pointing at a sign that read "For Whites Only," told Plaintiff that "we don't have one for you." Plaintiff reported that comment to Groff, but he took no effective remedial action.

25.     After Plaintiff complained to Groff, she began to experience additional harassment and retribution from Defendant.  On November 28, 2018, Groff informed Plaintiff that someone had

observed her "blowing past them on the highway," and had reported that observation to Ms. Christine Nizer, MVA's Administrator. No investigation was conducted into that report. Groff told Plaintiff that she needed to turn in her state vehicle to the fleet vehicle office. Plaintiff had not been speeding and Defendant never provided Plaintiff with any records reflecting that she had been speeding. Plaintiff did not receive any traffic tickets and never was assessed any points for speeding. Caucasian male CVAs that, unlike Plaintiff, actually sped in MVA-provided vehicles, did not have their state vehicles removed from them and returned to the fleet office.

26.     On November 30, 2018, Groff told Plaintiff that the decision to bar her from driving a state vehicle was made by someone above his pay grade and that she "must have pissed someone off." For the next three weeks, Plaintiff was required to drive her personal vehicle to perform her job. The suspension on Plaintiff driving a state vehicle was lifted in late December 2018 and her state vehicle was returned to her. No Caucasian or male VCAs were suspended from using their state vehicles for unsubstantiated reports of speeding unaccompanied by any tickets or other documentation that they were speeding. Plaintiff never received any discipline, formal or informal, for the alleged speeding incident.

27.     On November 30, 2018, consistent with MVA policies, procedures, regulations and guidelines, Plaintiff reported off for two (2) hours. On December 3, 2018, Plaintiff was counseled by William Chafin and Troy Williams about her calling out for two (2) hours on November 30, 2018. Caucasian male VCAs were not counseled for reporting off in similar circumstances.

28.     On December 6, 2018, Plaintiff filed Charge No. 531-2019-00710 with the EEOC, alleging sex and race discrimination arising from the removal of her state vehicle, as well as harassment because of her race and gender.

29.     Concerned about the disparate removal of her vehicle, as well as the harassment that she was

7

experiencing from Groff, her co-workers and school bus owners/state-contractors, Plaintiff, on December 17, 2018 filed an EEO complaint with the MDOT Office of Civil Rights and Fair Practices ("OCRFP").  It was assigned OCRFP Case No. 2019-T7-005.

30.     On December 21, 2018, Plaintiff met with Groff's supervisor, Debbie Rodgers, about her EEO complaint.

31.     Ms. Howard, from the MVA OCRFP, called Plaintiff on January 4, 2019, and pressured her to withdraw her complaint.

32.     Plaintiff met with Ms. Rodgers, Groff and Genice Fowler, MVA's Lead EEO Officer on January 10, 2019, regarding ORCFP Case No. 2019-T7-005.  Ms. Rodgers informed Plaintiff that she has an open door policy.  During that meeting, Plaintiff told Ms. Rodgers about the discrimination and harassment that she was experiencing from Groff, co-workers and school bus owners/state-contractors.  Plaintiff described the March 28, 2018 incident with Gilbert Bus Company, described in ¶¶ 17-18, above.  Ms. Rodgers expressed outraged and asked Groff why she was just hearing about it.  Groff responded that he did not think that the incident needed to be escalated.  Ms. Rodgers told Plaintiff that she should have come to her before she filed a complaint.  Ms. Fowler told Ms. Rodgers that they needed to meet with Plaintiff because she already had filed a charge of discrimination with the EEOC.  That EEOC charge of discrimination, Charge No. 531-2019-00710, had been filed on December 6, 2018, and Defendant and Plaintiff's managers Rodgers and Groff were aware of that charge of discrimination.

33.     On January 29, 2019, Plaintiff injured her rotator cuff at work and was unable to work from that date, until May 28, 2019.  That injury was covered by Worker's Compensation.

34.     On March 13, 2019, Plaintiff wrote a letter to Ms. Glynis Watford, Statewide EEO Coordinator for the Office of the Statewide EEO Coordinator regarding the discrimination and harassment that she

was experiencing and referenced OCRFP Case No. 2019-T7-005.

35.     On March 28, 2019, Plaintiff had an interview with the EEOC, in Baltimore, Maryland regarding Charge No. 531-2019-00710.

36.     Plaintiff was scheduled to perform low-priority random bus inspections and checks in Kent County, Maryland on June 26, 2019.

37.     On June 25, 2019, Plaintiff was performing inspections at the Baltimore County Public Schools' school bus lot in Arbutus, Baltimore County, Maryland.   During those inspections, Plaintiff had to remove, "pull," tags from school buses that failed their Type B inspections.   Such school buses could not be driven until the identified problems were corrected and they passed inspection.   Plaintiff's inspections that day resulted in ten (10) school buses' tags being pulled.

38.     Plaintiff, on June 25, 2019, informed her immediate supervisor, William Chafin, of the pulled tags.   Chafin directed Plaintiff to return to the Arbutus bus lot the next day, June 26, 2019, to re-inspect the school buses that had had their tags pulled for deficiencies.

39.     On June 26, 2019, as directed by Chafin, Plaintiff returned to the Arbutus lot and completed the inspections.   Those duties consumed Plaintiff's entire work day.   Plaintiff did not travel to the Eastern Shore that day.

40.     In a Request for Leave slip, dated June 27, 2019, Plaintiff requested 1.5 hours of sick leave on June 26, 2019.

41.     An MVA Vehicle Mileage Log dated July 1, 2019, contains handwritten entries for June 26, 2019 that were not made by Plaintiff.   On that document, Plaintiff hand-wrote accurate entries for June 24 and 25, 2019.   Plaintiff did not make the entry for June 26, 2019.   The handwritten entry for June 26, 2019, is not Plaintiff's handwriting.

42.     Despite her extended absence from work because of a covered worker's compensation injury,

Defendant**,** on July 1, 2019, required Plaintiff to provide a physician's certificate for any future usage of sick leave.  Caucasian and male VCAs were not subjected to similar requirements.

43.     On July 16, 2019, an MVA investigator, Robert Thomas, in an unmarked car, stalked Plaintiff by following her closely for hours, placing Plaintiff in fear for her safety.  Plaintiff, who  was terrified by Thomas' actions, called 911 to report that she was being stalked by another vehicle.  She also filed a report with the Montgomery County Police Department.  On July 19, 2019, Thomas never identified himself and his reason for stalking Plaintiff.  Plaintiff reported the vehicular stalking incident to Groff, but he was unconcerned.

44.     In July 2019, Plaintiff was informed that she was being investigated by the MVA for fraudulently reporting that she had traveled to the Eastern Shore on June 26, 2019, despite its knowledge that Plaintiff had worked at the Arbutus school bus lot that day and the forgery of her mileage log entry for that date.  During that investigation, Plaintiff never admitted that she had falsified any mileage or other reporting records regarding her work activities on June 26, 2019.  Plaintiff also never submitted false inspection reports for ostensible school bus inspections on the Eastern Shore on June 26, 2019.  Plaintiff never submitted a mileage log entry reflecting that she worked on the Eastern Shore on June 26, 2019.

45.     On July 22, 2019, Plaintiff was informed by Tory Williams that she was the subject of an MVA internal affairs investigation.  On July 23, 2019, Plaintiff was interviewed by Robert Thomas incident to that investigation.  Plaintiff told Thomas that she had worked at the Arbutus school bus lot on June 26, 2019. Plaintiff never was presented with a written version of statements made to Thomas during that interview.

46.     Two in-person mitigating circumstances conferences were held on July 25, 2019.  At that time, Plaintiff informed the investigators that she actually worked in Arbutus, not the Eastern Shore, on June

26, 2019.  A third mitigating circumstances conference was held telephonically on August 2, 2019. Plaintiff reiterated her work activities on June 26, 2019, and explained that she re-inspected the school buses that had had their tags pulled on June 25, 2019.

47.     Ignoring the evidence that Plaintiff had worked on June 26, 2019 at the Arbutus bus lot,  and that her mileage log had been falsified, the MVA, held discipline decision meetings with Plaintiff on August 12 and 13, 2019.  She was informed that she was to be terminated by MVA for falsification of records.

48.   On August 14, 2019, Plaintiff was handed three (3) documents: (1) a Charges for Termination letter; (2) a letter informing that she was being suspended indefinitely pending determination of the Charges for Termination letter; and (3) a Notice of Disqualification from Future Employment. Plaintiff's MVA employment was terminated on August 14, 2019.

49.     On August 28, 2019, Plaintiff appealed all three actions cited in the letters provided her on August 14, 2019.

50.     From 2017, through her termination, Plaintiff was subjected to unrelenting harassment and abusive contact by Groff, her co-workers and vendors because of her race and gender.  After Plaintiff commenced oppositional activities protected by Title VII and participated in EEO activities protected by Title VII, she suffered similar harassment and abusive conduct by Groff and other MVA managers. Those actions adversely affected Plaintiff's ability to perform her job and her health was affected.

51.     Caucasian male co-workers and co-workers that had not engaged in protected activities under Title VII and the MFEPA, including but not limited to, Steve Brown, Erik Faatz, Jeff Henieck, Saigoto Merennge and Alfred Morgan, were not subjected to similar harassment and abuse by Groff and other MVA managers, co-workers and vendors.

52.     Plaintiff was treated disparately compared to Caucasian, male co-workers, including Steve Brown, Saigoto Merennge, Erik Faatz, Jeff Henieck and Alfred Morgan.  Those Caucasian male CVAs were treated more favorably than Plaintiff, including, but not limited to (1) in the administration of discipline; (2) they never had their state vehicles removed based on uncorroborated complaints (3) they were not subjected to biased and irregular investigations that ignored exculpatory evidence; (4) they were not subjected to dangerous stalking by a state vehicle while working; (5)  management never ignored assaults and threats made by vendors; (6) they were not subjected to working restrictions; (7) they were not the object of racial and misogynist slurs from Groff and other MVA managers and co-workers; (8) they were not required to furnish physician's notes; and (9) they were not terminated for alleged violations of MVA policies, procedures, regulations and guidelines.  Erik Faatz and Alfred Morgan, contrary to MVA policies and procedures, would alter their mileage logs and manifests at the end of the workweek.  Groff would coach the Caucasian male CVAs on how to alter their areas of coverage to accommodate their personal activities.  Groff accommodated Morgan to adjust his schedule so that he could hunt in Western Maryland and allowed her to carry his personal gun in a state vehicle. After Morgan filled out his mileage log inaccurately, Groff made modifications to the mileage log. Such accommodations were not made for Plaintiff.

53.     Plaintiff's protected activities under Title VII and the MFEPA resulted directly in the retaliatory materially adverse actions described in this Complaint, including, but not limited to the harassment and abuse directed at her by Groff, her co-workers and vendors, being assaulted by vendors, being subjected to a biased and irregular internal investigation in which exculpatory evidence was ignored, removal of her state vehicle without corroborating evidence, being stalked by an investigator in a state vehicle while she was working, requiring the production of physician's notes and termination for alleged an unsupported violations of MVA policies, procedures, regulations and guidelines.

54.     Plaintiff's race and gender and her engaging in protected activities were motivating factors in the Department's adverse actions taken against her described in ¶ 53, above.

55.     Plaintiff's efforts to seek redress from the discrimination and retaliation described in this Complaint were met with indifference and hostility by Defendant's managers and officials.

56.     The reasons articulated by Defendant for the adverse actions taken against Plaintiff are false and pretextual.

57.     Defendant took materially adverse actions against Plaintiff that would have dissuaded a reasonable employee from engaging in protected activities in violation of § 704 of Title VII, 42 U.S.C. § 2000e-3 and the MFEPA, Md. Code Ann. State Gov't. Art. § 20-606(f).

58.     Plaintiff was treated disparately compared to employees not in her protected classifications, and that had not engaged in protected activities, including Steve Brown, Saigoto Merennge, Erik Faatz, Jeff Henieck and Alfred Morgan, who did not suffer adverse actions like those imposed on Plaintiff.

59.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT I

## UNLAWFUL DISCRIMINATION BASED ON RACE AND GENDER IN VIOLATION OF § 703 OF THE CIVIL RIGHTS ACT OF 1964

60.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

61.     Plaintiff is an African American female.

62.      Between 2017 and August 14, 2019, Defendant took a series of discriminatory adverse actions toward Plaintiff, including, but not limited to, the administration of discipline, including removal of

their state vehicles based on uncorroborated complaints, subjecting Plaintiff to a biased and irregular investigation which ignored exculpatory evidence, dangerously stalking Plaintiff in a state vehicle as she was trying to work, ignoring assaults and threats made to Plaintiff by vendors, condoning racial and misogynist slurs by Groff and Plaintiff's co-workers, subjecting Plaintiff to working restrictions that were not imposed on Plaintiff's co-workers, requiring physician's notes and termination for violations of MVA policies, procedures, regulations and guidelines.  Such actions were unlawful under Title VII, and resulted in Plaintiff suffering immediate economic losses and loss of job status and prestige.

63.     The adverse actions described above significantly affected the terms and conditions of Plaintiff's employment.

64.     Similarly-situated male co-workers, not in Plaintiff's protected classification, including Steve Brown, Saigoto Merennge, Erik Faatz, Jeff Henieck and Alfred Morgan had similar or worse performance or disciplinary issues to those for which Plaintiff was cited and disciplined, yet were not subjected to adverse actions similar to those imposed on Plaintiff.

65.     Plaintiff's race and gender were determining factors in the adverse actions described in ¶ 62, above.

66.     The explanations offered by Defendant for its actions are pretextual.

67.     Defendant's actions were unlawful and in violation of § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

68.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

## UNLAWFUL RETALIATION IN VIOLATION OF § 704 OF THE CIVIL RIGHTS ACT OF 1964

69.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 68 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

70.     Plaintiff began engaging in protected activities under Title VII in 2017, when she complained to Groff about his harassment regarding his supervision and comments by her co-workers.  In 2018, Plaintiff reported vicious racial assaults and threats made by vendors.  On December 6, 2018, Plaintiff filed her first charge of discrimination with the EEOC.  On December 17, 2018, Plaintiff filed her internal complaint of harassment and discrimination with OCRFP.  Plaintiff filed her second charge of discrimination with the EEOC on July 29, 2019.   Those protected activities continued unabated until Plaintiff's termination on August 14, 2019.

71.     Plaintiff has suffered unlawful retaliation by Defendant for engaging in activities protected by Title VII, including, but not limited to, disparate administration of discipline, removal of Plaintiff's state vehicle based on an uncorroborated complaint, subjecting Plaintiff to a biased and irregular investigation which ignored exculpatory evidence, dangerously stalking Plaintiff in a state vehicle as she was trying to work, ignoring assaults and threats made to Plaintiff by vendors, subjecting Plaintiff to working restrictions that were not imposed on Plaintiff's co-workers, condoning racial and misogynist slurs by Groff and Plaintiff's co-workers, requiring physician's notes and termination for violations of MVA policies, procedures, regulations and guidelines.  Such actions were unlawful under Title VII, and resulted in Plaintiff suffering immediate economic losses and loss of job status and prestige.

72.     Defendant took materially adverse actions against Plaintiff for her engaging in protected activities.  Such actions would dissuade a reasonable worker from engaging in activities protected by Title VII, including opposing unlawful employment practices and participating in protected EEO activities.

73.     There is a strong causal connection between Plaintiff's protected EEO activities and the adverse actions taken against her.

74.     But-for Plaintiff's protected activities, Defendant would not have taken the verse actions described above.

75.     Defendant's explanations for its actions are pretextual.

76.     Defendant retaliated against Plaintiff in violation of § 704 of Title VII, 42 U.S.C. § 2000e-3.

77.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

### COUNT III

### UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

78.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 77 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

79.     After Plaintiff opposed unlawful employment practices protected under Title VII, including based on her race and gender and participated in EEO activities, beginning in early 2017 and continuing until Plaintiff's termination in August 2019, Groff and other MVA managers, began and continued unabated a pattern of unwelcome harassment, intimidation and ridicule directed at Plaintiff because of

her race and gender and for her having opposed unlawful employment practices under Title VII, as well as for her participation in protected EEO activities.

80.     Such harassment, intimidation and ridicule created a workplace that was permeated with discriminatory and retaliatory intimidation, ridicule and insult that was sufficiently severe and pervasive to alter Plaintiff's conditions of employment and created an abusive retaliatory working environment.

81.     Groff's and other MVA managers' discriminatory and retaliatory conduct unreasonably interfered with Plaintiff's work performance.  Their actions were both objectively and subjectively offensive, such that a reasonable person, as well as Plaintiff, would perceive to be so.

82.     Defendant's actions substantially affected the terms, conditions and privileges of Plaintiff's employment.

83.     Defendant knew or should have known of Groff's and other MVA managers' actions and failed to act to prevent or remediate their unlawful retaliatory harassment.

84.     Defendant created, fostered and condoned an unlawful discriminatory and retaliatory hostile and abusive work environment in violation of §§703 and 704 of Title VII, 42 U.S.C. §§2000e-2 and 2000e-3.

85.      As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT IV

## UNLAWFUL DISCRIMINATION IN VIOLATION OF THE MARYLAND FEPA

86.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation

contained in ¶¶ 1 through 85 of this Complaint as though they are fully set forth herein, and makes

them part hereof and, furthermore, states as follows:

87.     Plaintiff is an African American female.

88.      Between 2017 and August 14, 2019, Defendant took a series of discriminatory adverse actions

toward Plaintiff, including, but not limited to, the administration of discipline, including removal of

their state vehicles based on uncorroborated complaints, subjecting Plaintiff to a biased and irregular

investigation which ignored exculpatory evidence, dangerously stalking Plaintiff in a state vehicle as

she was trying to work, ignoring assaults and threats made to Plaintiff by vendors, subjecting Plaintiff

to working restrictions that were not imposed on Plaintiff's co-workers, condoning racial and

misogynist slurs by Groff and Plaintiff's co-workers, requiring physician's notes and termination for

violations of MVA policies, procedures, regulations and guidelines.  Such actions were unlawful under

the MFEPA, and resulted in Plaintiff suffering immediate economic losses and loss of job status and

prestige.

89.     The adverse actions described above significantly affected the terms and conditions of

Plaintiff's employment.

90.     Similarly-situated male co-workers, not in Plaintiff's protected classification, including

Steve Brown, Saigoto Merennge, Erik Faatz, Jeff Henieck and Alfred Morgan, had similar or worse

performance or disciplinary issues to those for which Plaintiff was cited and disciplined, yet were not

subjected to adverse actions similar to those imposed on Plaintiff.

18

91.     Plaintiff's race and gender were determining factors in the adverse actions described in ¶88, above.

92.     The explanations offered by Defendant for its actions are pretextual.

93.     Defendant's actions were unlawful and in violation of the MFEPA.  Md. Code Ann. State Gov't. Art. § 20-606(a)(1).

94.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT V

## UNLAWFUL RETALIATION IN VIOLATION OF THE MARYLAND FEPA

95.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 94 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

96.     Plaintiff began engaging in protected activities under Title VII in 2017, when she complained to Groff about his harassment regarding his supervision and comments by her co-workers.  In 2018, Plaintiff reported vicious racial assaults and threats made by vendors.  In December 2018, Plaintiff filed her internal complaint of harassment and discrimination on December 17, 2018 with OCRFP. On December 6, 2018, Plaintiff filed her first charge of discrimination with the EEOC and the MCCR. Plaintiff filed her second charge of discrimination with the EEOC and the MCCR on July 29, 2019. Those protected activities continued unabated until Plaintiff's termination on August 14, 2019.

97.     Plaintiff has suffered unlawful retaliation by Defendant for engaging in activities protected by the MFEPA, including, but not limited to, disparate administration of discipline, removal of Plaintiff's state vehicle based on an uncorroborated complaint, subjecting Plaintiff to a biased and irregular

investigation which ignored exculpatory evidence, dangerously stalking Plaintiff in a state vehicle as she was trying to work, ignoring assaults and threats made to Plaintiff by vendors, subjecting Plaintiff to working restrictions that were not imposed on Plaintiff's co-workers, condoning racial and misogynist slurs by Groff and Plaintiff's co-workers, requiring physician's notes and termination for violations of MVA policies, procedures, regulations and guidelines.  Such actions were unlawful under the MFEPA, and resulted in Plaintiff suffering immediate economic losses and loss of job status and prestige.

98.   Defendant took materially adverse actions against Plaintiff for her engaging in protected activities.  Such actions would dissuade a reasonable worker from engaging in activities protected by the MFEPA, including opposing unlawful employment practices and participating in protected EEO activities.

99.   There is a strong causal connection between Plaintiff's protected EEO activities and the adverse actions taken against her.

100.   But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions described above.

101.   Defendant's explanations for its actions are pretextual.

102.   Defendant retaliated against Plaintiff in violation of the MFEPA, Md. Code Ann. State Gov't. Art. § 20-606(f).

103.   As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT VI

## UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

104.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 103 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

105.    After Plaintiff opposed unlawful employment practices protected under the MFEPA, including based on her race and gender and participated in EEO activities, beginning in early 2017 and continuing until Plaintiff's termination in August 2019, Groff and other MVA managers, began and continued unabated a pattern of unwelcome harassment, intimidation and ridicule directed at Plaintiff because of her race and gender and for her having opposed unlawful employment practices under the MFEPA, as well as for her participation in protected EEO activities.

106.    Such harassment, intimidation and ridicule created a workplace that was permeated with discriminatory and retaliatory intimidation, ridicule and insult that was sufficiently severe and pervasive to alter Plaintiff's conditions of employment and created an abusive retaliatory working environment.

107.    Groff's and other MVA managers' discriminatory and retaliatory conduct unreasonably interfered with Plaintiff's work performance.  Their actions were both objectively and subjectively offensive, such that a reasonable person, as well as Plaintiff, would perceive to be so.

108.    Defendant's actions substantially affected the terms, conditions and privileges of Plaintiff's employment.

109.    Defendant knew or should have known of Groff's and other MVA managers' actions and failed to act to prevent or remediate their unlawful retaliatory harassment.

110.    Defendant created, fostered and condoned an unlawful discriminatory and retaliatory hostile and abusive work environment in violation of the MFEPA, Md. Code Ann. §§ 20-606(a) and (f).

111.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court grant her the following relief, namely:

(i)  That this Court determines that the employment practices complained of in this Complaint are unlawful in that they violate Title VII and the MFEPA.

(ii) That Defendant pays Plaintiff a sum in excess of $300,000 for compensatory damages.

(iii) That Defendant pays Plaintiff's costs and expenses and reasonable attorney's fees as provided under federal laws in connection with this action;

(iv)  That this Court grants other and such further relief to the Plaintiff as it deems just and proper.

DATED:  NOVEMBER 5, 2020.

Nathaniel D. Johnson (MD Bar #14729)
Attorney for Plaintiff
Employment Law Firm, LLC
3261 Old Washington Road, Suite 2020
Waldorf, MD 20602
301 645-9103/888 492-9434 (fax)
ndjesquire@gmail.com