UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
Southern Division

MASHELIA GIBSON,

   *Plaintiff,*

   v.                                      Civil Action No. 20-3220-PX

MARYLAND MOTOR VEHICLE
ADMINISTRATION,

   *Defendant.*

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Defendant, the Motor Vehicle Administration ("MVA" or "Defendant") by its attorneys Anthony G. Brown, Attorney General for Maryland, David C. Merkin, Neil I. Jacobs and Leight D. Collins, Assistant Attorneys General, submit this Reply Memorandum of Law in Support of its Motion for Summary Judgment (ECF 42).

**I.    REPLY ARGUMENT**

**A.  DEFENDANT HAS ARTICULATED LEGITIMATE, NON-DISCRIMINATORY REASONS FOR ANY ALLEGED ADVERSE EMPLOYMENT ACTIONS AND PLAINTIFF CANNOT DEMONSTRATE THAT DEFENDANT'S PROFFERED REASONS ARE PRETEXTUAL.**

**1.  Plaintiff Claims, Without Support, that She Did Not Enter False Inspection Reports on June 26, 2019 and that Her Computer Entries were Altered and/or Changed.**

The Plaintiff's ("Ms. Gibson" or "Plaintiff") opposition memorandum (ECF 48) does not refute that the reason for terminating Ms. Gibson was for a "legitimate, nondiscriminatory reason" because Ms. Gibson falsified computer records. Plaintiff did not submit contrary facts or evidence. The Defendant met its burden, producing evidence that Ms. Gibson was terminated for deliberately falsifying her computer records when she entered false inspections into her State issued computer tablet on June 26, 2019 at 11:48 a.m., at the home of vehicle owner Kathy Hynson, d/b/a KTH Bus

Service, LLC, located at 11690 Saint James Newtown Road, Worton, Maryland 21678. (Attached MVA Exhibit 1, p. 1.)  The inspection was for school bus VIN# 1BAKGCPA2HF331816, a 2017 Blue Bird school bus, where Ms. Gibson entered the odometer reading for this school bus as "1 mile," and the bus purportedly passed the inspection.[1] (MVA Exhibit 1, p. 2.)

Defendant further met its burden by demonstrating Ms. Gibson entered fraudulent records of an inspection she never conducted; Plaintiff's next inspection on June 26, 2019 was scheduled for a 2019 Blue Bird school bus, VIN# 1BAKGCSA3KF355072, owned by Robert Vandyke, 307 Central Drive, Chestertown, Kent County, Maryland 21620.  (MVA Exhibit 1, p. 3.)   Mr. Vandyke's address is located more than 10 miles from Ms. Hynson's location, and it takes approximately 20 minutes to navigate the driving distance between the two addresses. Yet, Ms. Gibson recorded, on her State issued tablet, that Mr. Vandyke's bus passed inspection at 11:49 a.m on June 26, 2019,  only 1 minute after Ms. Hynson's  bus passed inspection. (MVA Exhibit 1, p. 2.)

Ms. Gibson has not, or cannot, present factual or expert evidence to dispute the MVA's business records and the affidavit of Nancy Schmid, verifying that it was in fact Ms. Gibson who made the entries into her computer tablet and no other person had changed these inspection documents.  (MVA's Memorandum of Law in Support of Defendant's Motion for Summary Judgement ("Defendant's Memorandum"), Exhibit 5, Affidavit of Nancy Schmid.) Ms. Schmid, a General Manager, who is employed by the MVA's authorized school bus data contractor NIC Inc., d/b/a Tyler Maryland, affirmed that Tyler Maryland is authorized to store the record of entries and

---

[1] The Maryland Vehicle Law classifies school vehicles as Type I school buses and Type II school vehicles, differentiated by gross vehicle weight. Md. Code Ann., Transp. II, §§ 11-153, 11-154, 11-173 and 11-174.  Type A inspections, of both school vehicle Types I and II, are performed and certified by the vehicle owner.  A Type B inspection must have MVA participation at least once per year and is scheduled by MVA.  See COMAR 11.19.04.02 and .03.

other data related to MVA's school bus inspections pursuant to a lawfully procured contract with MDOT MVA. (Schmid Affidavit ¶¶ 1-2.)  Ms. Schmid clearly states, "The documents attached are a full and complete record of entries made by Mashelia Gibson into the Maryland Statewide Vehicle Safety Inspection Platform on June 26, 2019, and that no one else changed her entries." (Schmid Affidavit ¶ 3.) Ms. Schmid further states, "Inspection data proves that the Bus Inspections in Question were created and passed by Masheila (sic) Gibson. Since she is listed as the last person to modify the record, no other user changed these inspections records." (Attachment to Affidavit of Schmid, p. 2.)

Ms. Gibson baldly claims her supervisor, Michael Groff, may have changed her entries in the computer database. (Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p. 24.) Ms. Gibson does not provide any substantive evidence, admissible evidence, or any computer data, nor expert testimony refuting the computer data presented by the MVA.[2]  Thus, Plaintiff is incompetent to opine that Mr. Groff, or any MVA employee, entered an inspection under her name. Fed. R. Evid. 701(c).  Plaintiff's "[u]nsupported speculation is not sufficient to defeat summary judgement." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (employee's unsupported fear of retaliation inadequate to show coercion).   Ms. Gibson's own Declaration/Affidavit rehashes the Complaint she filed in this Court and does not offer actual evidence to support her claim. Thus, Plaintiff failed to present any evidence with which a fact

---

[2] Plaintiff obtained a handwriting expert, Wendy Carlson, to attempt to refute that it is her signature on the mileage log for the date in question of June 26, 2019.  Defendant designated its own expert witness Donna O. Eisenberg, as a Forensic Documents Examiner in this manner.  Ms. Eisenberg, a former Homeland Security Agent with ICE and its predecessor the United States Department of the Treasury, proffered that Ms. Gibson was in fact the author of the signature on the falsified mileage log and the falsified entries that she had driven to the Eastern Shore on June 26, 2019. Though this designation was not filed with the Court per the Federal Rules and Local Rules, a copy of said report is attached to this Reply Memorandum. See Eisenberg Report and Attachments, attached hereto as MVA Exhibit 2.

finder could objectively disregard the legitimate, nondiscriminatory reason for terminating Ms. Gibson because she falsified school bus inspection reports on her State issued computer tablet. Barring evidence to the contrary, summary judgment should be granted for the Defendant regarding Plaintiff's federal and state claims of wrongful termination.

2. **Plaintiff Erroneously Claims that Her Text Message Does Not Support Her Admission to MVA Investigators, and Her Supervisors, that She Falsified Her Computer Records, Mileage Logs and Her Attendance on June 26, 2019.**

It is astonishing that Plaintiff argues that "Plaintiff's July 23rd text to Mr. Hollis is not a 'smoking gun' confession by Plaintiff." (Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p. 24.) To the contrary, this text, written by Ms. Gibson to Hank Hollis, an employee union representative, produced to MVA during discovery, demonstrates otherwise. On July 23, 2019, at 8:44 pm, Ms. Gibson had this text exchange concerning MVA's inquiry:

> "Hank Hollis: Ok. This is just the investigation meeting, right?
>
> Mashelia Gibson: They told me a falsified mileage log for my truck on January 17, 2019 and June 2019 and I did but it was a mistake with the mileage log then they got me on putting fake repair orders in the system i did three. So that was what they brought to me and I told them that the counties I had been trying to avoid do [sic] to discrimination is why I didn't drive there and my boss purposely sent me.:

(Defendant's Memorandum in Support of Summary Judgment, Exhibit 9, pp. 29, 31.)

Plainly, Ms. Gibson's text is an admission of a party against her interest pursuant to Rule 801(d)(2)(A). Ms. Gibson admits to writing the text message. but she belatedly now equivocates, "At worst, it is an ambiguous communication scribbled by Plaintiff while she was despondent, even suicidal shortly after being verbally assaulted by [MVA Investigator] Thomas." (Plaintiff's Opposition to Defendant's Motion for Summary Judgment, pp. 24-25, citing Opposition Exhibit 20; Gibson Dep. pp. 251, 276-87; Gibson Decl. ¶53.) Attempting to walk back her statement to Mr. Hollis, Ms. Gibson admits in her Opposition (p. 24, footnote 40) that she may have confessed

during the July 23, 2019 Investigatory Interview, blaming the confession on being under duress. In her Opposition, Ms. Gibson proffers that she did not mean to text what she did as, "she hurriedly and distractedly texted her response to Hollis, without proofreading it." (Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p. 16.)

Ms. Gibson never took steps to clarify her text message prior to the initiation of the instant lawsuit. To the contrary, Ms. Gibson stated in both her deposition, and now in her opposition to Defendant's Motion for Summary Judgment, that she did not mean to say what she wrote in her own text message. She has denied she lied, going back to the summer of 2019, about her admissions against interest- falsifying school bus inspections, computer records, mileage logs, and her attendance. Simply put, Ms. Gibson is using self-serving excuses when confronted with incontrovertible facts, and this cannot serve to overcome the MVA's evidence.

**3. Plaintiff's Rationale that She was Not Responsible for Her Conduct is Unsupported.**

Ms. Gibson seeks to convince the Court that she was not responsible for her conduct leading to her employment termination. Ms. Gibson alleged experiencing mental health issues, but she did not provide any documentation in support of her claims, such as the name of a treating mental health professional or physician, or a list of prescribed medication. During the entire discovery process, including in the words of her affidavit, Ms. Gibson failed to produce even one medical document verifying she received medical treatment during any time related to the instant case. Instead, she relies on her own words to allege that she was despondent and/or under duress after her meeting with MVA Investigator Thomas. Investigator Thomas was adamant in his deposition that he never threatened, yelled, raised his voice, slammed the table, used profanity, or pressured Ms. Gibson into any type of confession. (Thomas Deposition, p. 75.) Paul Adams, the Manager of MVA's Internal Investigations Unit, participated in the interview and confirmed that

Ms. Gibson admitted to falsifying the documents and there were no threats uttered toward her. (Affidavit of Paul Adams attached as MVA Exhibit 3, p. 3).[3]

Further, Plaintiff's claim that she was told to "not report "to the Eastern Shore on June 26, 2019 has no merit. (Opposition to Defendant's Motion for Summary Judgment, p. 23.) Ms. Gibson claims she had to return to the Baltimore County School Bus Depot after she issued multiple violations for school buses in Baltimore County on June 25, 2019; she asserts there was an urgency to get those buses back into service. This claim is not corroborated. William Chafin, a former supervisor in the MVA's School Bus Inspection Division, deposed by Plaintiff more than four years after these alleged inspections, could not recall the event, or a conversation with Plaintiff, even after being presented with dates identified in the Complaint; he said, "that could happen," but he could not recall a conversation with Plaintiff on any specific date. (Exhibit 4, pp. 3-4.) No documents exist to support any such discussion between Plaintiff and Mr. Chafin.

The facts show that Baltimore County Public Schools ended classes for the 2018- 19 school year on June 14, 2019. (See Baltimore County Public Schools Calendar for 2018-2019, attached hereto as Exhibit 4.) Ms. Gibson did not issue multiple violations for Baltimore County School buses on June 25, 2019; she only issued three repair orders out of a total of 24 total inspections. (Exhibit 1, pp. 4-7.)

Related to these repair orders, Ms. Gibson presented another self-serving statement that on June 26, 2019, she returned to the Baltimore County Bus Depot in Arbutus and performed follow-up inspections of the previously issued repair orders. (Exhibit 1, pp. 1, 2, 8-10.). There is

---

[3] Ms. Gibson submitted an unsigned declaration from her union representative, Tammie Booze, who accompanied her to the July 23, 2019 inquiry. The Defendant, contemporaneously with this Reply Memorandum, is filing a motion to strike the Booze declaration. If the Court denies the motion and accepts the unsigned declaration, any statement, under oath, that Ms. Gibson denied the charged misconduct is conspicuously absent. (Exhibit 19, Booze Affidavit).

no evidence at all in the records of Ms. Gibson's June 26, 2019 inspection entries that she engaged in this activity. Indeed, it was only after Ms. Gibson was confronted with the computer records, the mileage logs, and with her own admissions at the July 23, 2019 inquiry, that Plaintiff three days later asserted, on July 26, 2019, that supervisors told her not to go to the Eastern Shore on June 26, 2019. Ms. Gibson's ineffectual attempt to present a foundation in support of any of her accounts defies logic, particularly considering the concrete evidence presented by the MVA demonstrating Ms. Gibson created fraudulent records on June 26, 2019.

**4. Plaintiff Fails to Demonstrate that She was Retaliated Against for Filing her 2018 Complaint of Discrimination.**

To avoid the consequences necessitating dismissal of this case pursuant to Title VII time requirements, Plaintiff now claims her employment termination was an act of retaliation for a December 2018 discrimination complaint following an incident where she was briefly restricted from using a State motor vehicle. The MVA Office of Fair Practices and Civil Rights ("OFPCR") and the State denied her complaint, determining this temporary suspension from participating in the MVA fleet car program was not an act of discrimination under federal or state law. Plaintiff fails to show how this short, two or three-week suspension related to a motorist's complaint about Ms. Gibson's driving behavior, (witnessed by the complaining motorist), connects to her instant case. The motor vehicle incident was not an element of Ms. Gibson's immediate job duties, nor was the complaint registered by any supervisor or employee within her division of the MVA. Following the instant employment termination, in August 2019, Genice Fowler, also an African American woman, investigated Ms. Gibson's claims of discrimination and determined the claims were unjustified. (See Fowler Affidavit, Defendant's Memorandum, Exhibit 4.)

Ms. Gibson's retaliation claim must be dismissed because the MVA terminated her employment, believing that she falsified school bus inspection reports, mileage logs and

attendance records, although she erroneously claims her termination was pretextual. Accordingly, the burden to demonstrate pretext has "merged with the ultimate burden of persuading the court that [Ms. Gibson] has been the victim of intentional discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Plaintiff did not overcome this burden in her Opposition to Defendant's Motion for Summary Judgment.

More recently, the Supreme Court has clarified how a claimant can avoid summary judgment as to pretext - a plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000). A plaintiff could accomplish this goal "by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. 248 at 256.

*Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007) is apposite. In *Holland*, the plaintiff alleged his employment was terminated because of his race and complaints of discrimination. The district court granted summary judgment and the plaintiff appealed. Unlike the instant case, the parties agreed that Mr. Holland evinced a prima facie case of discrimination. *Id*. 487 at 214. The defendant met its burden of production to show a legitimate, nondiscriminatory reason for the plaintiff's termination because he threatened his supervisor. Therefore, the burden then shifted back to plaintiff to prove this stated reason was pretext for discrimination. *Id.* 487 at 214.

On appeal, it was determined the plaintiff could not meet his burden: "Unfortunately for Holland, he has not put forth substantive evidence showing that [defendant's] proffered legitimate explanation was false. Aside from his denials as to the threats (which we accept as true), nothing in the record supports an inference…[the] explanation was pretextual, or perhaps more on point,

8

that [the decision maker] did not believe that [plaintiff] had threatened [his coworker] when he made the decision to fire him." *Id.* 487 at 215.

Like the plaintiff in *Holland*, Ms. Gibson has not, and cannot, put forth sufficient evidence showing that the MVA's proffered legitimate explanation was false. Aside from her contention that she was not told to go to the Eastern Shore, she has no support in the form of any computer records, mileage logs, car readers, or customer comments that indicate that she did not falsify materials. In short, on the evidence in the record, no reasonable juror could conclude that the MVA's "proffered explanation is unworthy of credence." *Burdine*, *supra,* 450 U.S. 248, 256 (1981). Beyond that, Gibson has failed to put forth sufficient evidence showing that intentional discrimination was the real reason behind the Defendant's decision to end her employment. The MVA was reasonably alarmed to discover that an employee falsified inspection records, in direct contravention of its responsibility to assure the public that children can safely travel to their schools. Accordingly, summary judgment must be granted as to the Defendant's federal and state law retaliation claims.

**5. Defendant Cannot Satisfy the Second Element of a Prima Facie Case of Discrimination Through Comparable Instances of Employee Discipline.**

Unless Plaintiff can provide some direct evidence of discrimination, she must rely on the *McDonnell Douglass* framework.[4] To establish a prima facie case of discriminatory enforcement of employee disciplinary measures under Title VII, in the Fourth Circuit, the plaintiff must show: (1) that she is a member of a class protected by Title VII; (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected

---

[4] The Supreme Court's guidance as to the proper order and nature of proof in a Title VII action is set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its application to this case is discussed more fully in Defendant's Memorandum in Support of Summary Judgment, pp. 22-26.

class; and (3) that the disciplinary measures enforced against her were more severe than those enforced against other employees. *Manning v. Foodarama, Inc.*, 195 F. Supp. 2d 741, 744-745 (D. Md. 2002). Additionally, "it is typically not permissible to infer the existence of disparate discipline by comparison with one single event." *Id*. 195 F. Supp. 2d at 745. Thus, "the question confronting a judge faced with determining if a prima facie case under Title VII has been made, is whether the record as a whole gives rise to a reasonable inference of racially discriminatory conduct by the employer." *Id.* Based on these criteria, Plaintiff is unable to establish a prima facie claim for disparate enforcement of discipline.

Plaintiff alleges that a fellow MVA bus inspector, Merenegge Salgado, falsified records, receiving a suspension instead of a termination for this conduct. (Plaintiff's Opposition to Defendant's Motion for Summary Judgment, pp. 24-29) Several flaws exist in this example, preventing Plaintiff from establishing that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees out of the protected class. First, Mr. Salgado is also from a protected class, Hispanic Black, comparable to the Plaintiff, which she never identifies. Second, this is only one case of alleged disparate treatment, which the 4th Circuit has indicated is not typically sufficient. *Manning*, *Id.* 195 F. Supp. at 744-745. Third, Mr. Salgado contested factual issues during his investigatory interview and asserted defenses on his behalf, including that he performed the vehicle repair work during his lunch break, not during work hours as alleged. Fourth, each case of misconduct was treated independently, and not in comparison.

Clearly, without more, Plaintiff's claims for disparate enforcement of discipline with respect to termination must fail as a matter of law. Plaintiff's case consists of a wholly different scenario, including her admission to not conducting bus safety inspections, falsifying records of

the non-conducted inspections, and her termination for both dishonesty and for jeopardizing the safety of school children, all constituting legitimate, nondiscriminatory concerns.

**6. Plaintiff Fails to Demonstrate that She was Subjected to a Hostile Work Environment.**

For the reasons set forth above and incorporated in Defendant's Memorandum of Law in Support of Summary Judgment, pp. 15-20, 26-29, Plaintiff cannot demonstrate that she was subjected to a hostile work environment because of her race and/or gender and summary judgment should be granted.

### B.  PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.

Ms. Gibson failed to exhaust her administrative remedies with her December 2018 Complaint of Discrimination because she abandoned it and failed to obtain a right to sue letter, a prerequisite to filing an action under Title VII.  42 U.S.C. § 2000e-5(f)(1), *Davis v. North Carolina Dep't Corr.*, 48 F.3d 134, 140 (4th Cir. 1995).  Ms. Gibson filed the claim with OFPCR, who determined no viable discrimination; she appealed that to the head of civil rights at Maryland's Department of Budget and Management ("DBM"), who also found no grounds to reverse OFPCR's determinations. Ms. Gibson then was notified of her right to file for external review of her claims, which she did not do. (Defendant's Memorandum in Support of Summary Judgment, pp. 29-31).  Ms. Gibson was afforded the right to appeal the DBM determination of her 2018 discrimination claims to either the MCCR or the EEOC but failed to do so. Thus, her failure to obtain a right to sue letter is entirely her own making and she was never entitled to be issued one. Compare *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091 (4th Cir. 1982) (EEOC's failure to act deprived Title VII plaintiff of right to sue letter).  Failing to exhaust this administrative remedy, Ms. Gibson did not receive a right to sue letter and is time-barred from bringing claims related to her December 2018 complaint in this Court.

Similar to her treatment of her 2018 Complaint of Discrimination, Ms. Gibson failed to take advantage of challenging the factual basis for any of her discipline, most notably her termination. Ms. Gibson initially challenged the factual basis for her termination, and then dismissed all appeals of her termination on December 2, 2019. (Defendant's Memorandum in Support of Summary Judgment, pp. 8-9). When she subsequently withdrew her appeal, she conceded the legal validity of her termination. *Forster v. State Office of the Public Defender*, 426 Md. 565, 588-591 (2012). Her claim as to why she dismissed her appeal is not a viable defense to the action, as, even if she did not want to return to the MVA, her termination is still part of her personnel record and the legal reason for her separation, if ever there is an inquiry for future employment purposes. See *Forster*, 426 Md. 588-589. This Court should consider the final administrative decision upholding termination of Ms. Gibson's employment as a final decision conclusive as to the validity of the termination of her employment, which is judicial in nature because Plaintiff had abandoned rights to an administrative hearing, circuit court judicial review and appellate review. See *Carroll v. City of Westminster*, 52 F.Supp.2d 546, 555-556.

### C. THE PLAINTIFF'S STATE LAW CLAIMS FOR RETALIATION AND DISCRIMINATION BASED ON RACIAL STATEMENTS, EVEN IF TRUE, ARE TIME-BARRED.

**1. Plaintiff was Required to File Her Administrative Complaints Within Months of Mr. Groff's Alleged Harassment, not Two Years.**

Plaintiff was not allowed the two-year period to bring her complaints under the Maryland Fair Employment Practices Act ("MFEPA") because she made complaints against Mr. Groff, individually, without providing any particulars that the MVA discriminated against her by policy or acceptance of harassment. When filing her administrative complaints, the MFEPA required her to state the "name and address of the person or State or local unit alleged to have committed the discriminatory act . . ." Md. Ann. Code, State Gov't (SG) § 20-1004(b)(2)(i). The discrimination

12

complaints for harassment are against Mr. Groff and do not identify an MVA policy or agency support for the alleged harassment. The two-year provision is for filing a "complaint for harassment against an *employer*" - not an individual person. SG § 20-1004(c)(3)(i) (Emphasis added). The Maryland Legislature has made a distinction between Plaintiff's complaints against Mr. Groff and those against employer organizations who engage in discriminatory policies imposing or tolerating harassment. Plaintiff's administrative complaints were required to be filed within the time limits of SG § 20-1004(c)(1) and (2).

2. **Plaintiff Failed to Timely File Administrative Complaints Alleging Harassment Against Mr. Groff.**

As addressed in Defendant's Memorandum in Support of Summary Judgment, pp. 31-34, compliance with MFEPA's administrative complaint procedures is a condition precedent to bringing an action under the Act. SG § 20-1013(a)(1). In its enforcement provisions, SG § 20-1004(c)(1) provides: "A complaint shall be filed [with the administrative agency] within 6 months after the date on which the alleged discriminatory act occurred." Under 20-1004(b), the complaint (1) shall be in writing; (2) state the name and address of the person alleged to have committed the discriminatory act, with particularity describing the alleged discriminatory act; (3) contain any other information the commission requires; and (4) be signed by the plaintiff under oath.

The allegations alleged by Plaintiff in her Opposition to Defendant's Motion for Summary Judgment at pp. 3-4, and in her original Complaint, allegedly committed by Michael Groff were not for harassment.

> Groff told Plaintiff that she was the "first and only female that he would hire." He also laughed at, condoned and refused to censure VCAs Morgan and Faatz, who commented that Plaintiff was "dumb." Although Plaintiff reported those comments to Groff, he took no remedial action. Gibson representatives, as well as representatives from the local school boards. Plaintiff was authorized to remove (take) tags from school buses failing to comply with COMAR requirements. Those tags would be returned to the bus operators upon remediation of the problems noted in the citations.

Gibson Decl. ¶8; Gibson Dep., p. 43.

3 Prior to his promotion to his VID manager position in early 2019, Groff was Plaintiff's immediate supervisor. Groff Dep. pp. 10-11; Gibson Dep. p. 168; Gibson Decl. ¶10. Before working at MVA, Groff was an auto mechanic. Groff made racially insensitive comments that, when conducting inspections, Plaintiff should not ride with another African American VCA because it "looks strange." During a VID staff meeting presided over by Groff, VCA Morgan told Plaintiff that "you need to stop complaining about everything because, in the history of the department, we have had one other black employee and if anyone deserved to get shot, it was him." Groff laughed at VCA Morgan's comment and did not censure him. During a school bus inspection in St. Mary's County, VCA Morgan, in front of St. Mary's County Public Schools representatives, repeatedly referred to Plaintiff demeaningly as "it," telling the school officials that they should disregard "it." Plaintiff reported VCA Morgan's shocking comments to Groff, but he was unconcerned. Neither Groff nor any other MVA manager took effective remedial actions concerning the racial and misogynistic comments uttered by Plaintiff's co-workers. Gibson Decl. ¶14; Gibson Dep. pp. 63, 92, 132. From late 2017 until early 2019, Plaintiff was subjected to vile, threatening racist and misogynistic comments from State of Maryland bus contractors and various school system employees. At the time of each incident, Plaintiff reported them to Mike Groff. He was unconcerned and flippantly told Plaintiff that she would have to "get used to it."

Gibson Decl. ¶15; Gibson Dep. pp. 63, 66, 81, 101-05.

Throughout this entire civil litigation, Ms. Gibson's allegations of discrimination against Mr. Groff were for events that occurred in March 2018 or earlier for alleged racist comments by external customers and/or by her superiors. Thus, the Plaintiff would have had to file her written State Law administrative claim for racial and gender discrimination and for retaliation within 180 days of the alleged events, in writing and under oath, which would have been in September 2018. Plaintiff did not file EEOC claims for any alleged incidents in 2018, other than her State vehicle suspension on December 17, 2018. She did not bring forth her racial discrimination until July 29, 2019. Therefore, judgment for Defendant, on these State Law claims for discrimination and retaliation, based on allegations against Mr. Groff, should be entered regardless of their merit as they are time-barred. Independent from other grounds set forth herein and in Defendant's Memorandum, Defendant's Motion for Summary Judgment should be granted as to Counts IV, V and VI.

## II. CONCLUSION

For the reasons set forth above and for the reasons set forth in Defendant's Memorandum of April 28, 2023, Defendant, MVA respectfully asks the Court to grant its motion for summary judgment in its entirety.

                                           Respectfully Submitted,

                                           ANTHONY G. BROWN
Attorney General of Maryland

/S/ Leight D. Collins
_____
LEIGHT D. COLLINS
Assistant Attorney General
Federal Bar No. 06659

/S/ Neil I. Jacobs
_____
NEIL I. JACOBS
Assistant Attorney General
Federal Bar No. 11634



/S/ David C. Merkin
_____
DAVID C. MERKIN
Assistant Attorney General
Federal Bar No. 12132
Office of the Attorney General
Motor Vehicle Administration
6601 Ritchie Highway, N.E., Room 200
Glen Burnie, Maryland  21062
(410) 768-7414
(410) 768-7474 (facsimile)
lcollins@oag.state.md.us
njacobs@oag.state.md.us
dmerkin@oag.state.md.us

**Dated: June 16, 2023**     **Attorneys for Motor Vehicle Administration**