**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td>

MASHELIA GIBSON,
         Plaintiff,

v.

MARYLAND MOTOR
VEHICLE
ADMINISTRATION,

         Defendant.

</td>
<td>

Civil Action No. 20-cv-3220-ABA

</td></tr>
</table>

**DEFENDANT'S MOTION TO STRIKE AND EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT, WENDY CARLSON**

Defendant, Maryland Motor Vehicle Administration, moves to strike and exclude the testimony of Plaintiff's designated expert, Wendy Carlson, under Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1), and Federal Rules of Evidence 103(d) and 702. As set forth below, Plaintiff has failed to comply with the expert disclosure requirements of Rule 26. During her *de bene esse* deposition, Ms. Carlson materially departed from the opinions disclosed in her written report, offered entirely new theories and opinions, provided undisclosed rebuttal testimony to Defendant's expert, and testified inconsistently with her own stated methodology. Because this late disclosure prejudices Defendant and deprives counsel of the ability to properly prepare for trial—an issue for which this Court has previously excluded Plaintiff's medical experts, Ms. Carlson's testimony must be precluded.

1

## INTRODUCTION AND FACTUAL BACKGROUND

Rule 26(a)(2) requires that a party designating an expert witness provide a written report containing a complete statement of all opinions the witness will express, the bases and reasons for them, and the facts or data considered. When an expert's testimony diverges from or fails to substantiate the report., the disclosure is non-compliant, and exclusion under Rules 37(c)(1) and 103(d) is required to prevent unfair surprise and ensure fairness at trial.

### A. Ms. Carlson's Report

Plaintiff provided Ms. Carlson's expert report, dated May 30, 2022. (Ex. A, Carlson Written Report.) Plaintiff has never submitted any additional report or a supplemental report. The original report stated that it is Ms. Carlson's opinion that it is highly probable that four sets of questioned initials attributed to Mashelia Gibson on a mileage log were not written by the person who wrote the purported known samples of Ms. Gibson's handwriting that were provided to her by Ms. Gibson and her attorney. (Ex. A, p. 3.) This opinion created a significant contradiction, as Ms. Gibson had already admitted under oath that two of those sets of initials were hers. (Complaint (ECF No. 1, ¶ 41), and Deposition of MaShelia Gibson Tr. 167:18 – 169:11.)

### B. Ms. Carolson's Deposition Testimony

During her *de bene esse* deposition on April 2, 2026, Ms. Carlson's testimony was materially and significantly inconsistent with her written report. (Ex. B, Deposition of Wendy Carlson). Instead of relying on the findings in her report, Ms. Carlson rendered a new opinion, as she compared sections of the questioned document to other sections of the

questioned document. Over Defendant's objection, she testified that she compared the third line on the mileage log, (June 26, 2019), to the two lines above it (June 24 and 25, 2019), opining they were written by different people. (Ex. B, Carlson Tr. 22:1-8.) In rendering this new opinion, Ms. Carlson did not testify to a level of certainty, nor did she state the opinion was held to a reasonable degree of certainty.

This comparative examination is absent from her report. During her direct testimony, Ms. Carlson only referenced the findings in her report once, to note a "typo" she did not identify. (Exhibit A, Carlson Tr. 15:2-19.) On cross-examination, Ms. Carlson explicitly confirmed her new opinions were not contained in her report:

> Q. I am going to show you your report one more time and let me rotate it. In your specific findings section, isn't it true that every finding in this section is only regarding those initials that are at the end of the lines and at the bottom of the page?
>
> MR. DAY: Objection. Document speaks for itself.
>
> Q. Ms. Carlson, is it true that those are the only things you made specific findings on in this report?
>
> A. I believe that to be the case.
>
> Q. And there are no specific findings that you made in the report regarding line three compared to lines one and two, correct?
>
> A. Correct.
>
> Q. And there are no specific findings in the report where you compared the Q1 through 4 signatures against each other, correct?
>
> A. Correct.
>
> Q. And you rendered no opinion on your official report about line three compared to lines one and two, correct?
>
> A. Correct.

(Ex. B, Carlson Tr. 122:8 –123:9.)

Ms. Carlson also offered opinions on handwriting, other than the signatures, contained in the mileage log, including dates, destinations, and odometer numbers. (Ex. B. Carlson Tr. 52:21 – 53:18.) However, her report does not mention this, but explicitly states she only conducted "a meticulous side by side examination and comparison of the questioned signature to the purported known Mashelia Gibson signatures." (Ex. A, at 5.)

### C. Undisclosed Rebuttal and Scope Issues

Plaintiff also used the deposition to elicit undisclosed rebuttal testimony. Ms. Carlson was shown images from Defendant's expert's report and asked to form an opinion. But plaintiff never filed a rebuttal report under Rule 26(a)(2)(D)(ii) indicating that Ms. Carlson would conduct any such analysis.[1] Further, while Ms. Carlson opined on seven different sections of Defendant's expert's report, she only offered her opinion to a reasonable degree of certainty for two of them. (Ex. B. Carlson Tr. 30:14 –32:7, 38:1-17.)

Finally, Plaintiff's counsel asked questions exceeding the standard scope of a forensic document examiner, including her opinion on how someone could forge a signature. (Ex. A, Carlson Tr. 24:20 – 26:6), and whether she could determine anything about the writer's state of mind. (Ex. A, Carlson Tr. 58:7 -59:1.)

---

[1] Defendant disclosed its expert and expert report on August 8, 2022. Therefore, under Rule 26(a)(2)(D)(ii), if Plaintiff wanted to have Ms. Carlson comment on defendant's expert's report, the deadline to do so was September 8, 2022.

**LEGAL STANDARD**

Rule 26(a)(2)(B) requires that an expert's report must be detailed and complete, including "a complete statement of all opinions the witness will express and the basis and reasons for them [and] the facts or data considered by the witness in forming them." *See also Osunde v. Lewis*, 281 F.R.D. 250, 257 (D. Md. 2012) ("[T]he report must contain 'a complete statement of *all* opinions the witness will express,' as well as the basis and reasons for those opinions and the facts or data considered by the witness in forming his opinions.") (emphasis in original).    An additional report must be submitted if the expert intends to comment on and contradict or rebut the expert report of another party under Rule 26(a)(2)(D)(ii).

In addition, Rule 26(e)(1)(A) requires that a party who has made a disclosure under Rule 26(a) must supplement or correct its disclosure in a timely manner if the party learns that in some material respect, the disclosure or response is incomplete or incorrect.  Rule 26(e)(2) makes clear that the duty to supplement extends to expert reports under Rule 26(a)(2)(B).

Fed. R. Civ. P. 26 advisory committee note (1993) states that the report "should be written in a manner that reflects the testimony to be given" by the expert witness.  A report is complete, and compliant with Rule 26(a)(2), if it is sufficiently detailed such that "surprise is eliminated."  *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 503 (D. Md. 1997) (citations and internal quotation marks omitted).

Expert testimony is admissible only if the witness has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. "[N]othing in either *Daubert* or the

5

Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 157 (1999).

## ARGUMENT

### A. Plaintiff's Rule 26 Violations  Warrant Exclusion of Ms. Carlson's Testimony under Rule 37(c).

Because Plaintiff failed to supplement her report under Rule 26(e)(1)(A) or provide a rebuttal report under Rule 26(a)(2)(D)(ii), the exclusion of Ms. Carlson's testimony is appropriate under Rule 37(c), "unless the failure is substantially justified or is harmless." It is the non-disclosing party that bears the burden of proving justification or harmlessness. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Plaintiff cannot meet this burden. The line of questioning at the deposition indicates Plaintiff was aware of these new comparative opinions prior to the testimony yet chose not to supplement her Rule 26 disclosures. Defendant was consequently unable to have its own expert review these new opinions and the basis for them, or properly prepare for cross-examination regarding them. Defendant was thus prejudiced by the substance of Ms. Carlson's deposition testimony, which focused on entirely new opinions rather than those contained in her report.

Because Plaintiff has committed a Rule 26 violation by failing to timely supplement her disclosure or disclose her expert's rebuttal testimony, and because Ms. Carlson failed to testify to the findings and opinion contained in her report, her testimony should be excluded.

B. **Ms. Carlson Failed To Reliably Apply Her Stated Methodologies And Her Opinion Is Not Reliable**.

In her report, Ms. Carlson stated she applied the ACE methodology recommended by the Scientific Working Group for Forensic Document Examiners ("SWGDOC").  (Ex. A, at 4.) She initially confirmed this during her testimony.  (Ex. B, Carlson Tr. 11:7-11.) However, when shown the SWGDOC Standard for Examination of Handwritten Items (Ex. C),  Ms. Carlson dismissed the standard as "vague" and claimed it contained mistaken terms. (Ex. B, Carlson Tr., 86:5-7.)

The SWGDOC standard requires that any comparison be only made between the same types of writing and using similar characters.  (Ex. C, ¶ 7.11.1 and ¶ 3.3.4.)  The standard specifically identifies signatures as a separate type of writing from printing or cursive. (Ex. C ¶ 3.3.14.)  During her testimony, Ms. Carlson struggled to recall that signatures were a separate type of writing, (Ex. B, Carlson Tr. 94:13-16.), and she compared lower case initials to full signatures containing capital letters. When reminded that the standard requires an examiner to stop the examination if the known writing is not comparable to the questioned writing  (Ex. B, Carlson Tr. 95:19 –96:1.), Ms. Carlson became defensive over what it meant to be comparable, again calling the definition ambiguous and only guidelines, not hard and fast rules, before finally stating: "I can compare them, so that makes them comparable."  (Ex. B, Carlson Tr. 95:19 –98:14.)  Later, she was asked if two characters in the purported known sample and the questioned writing were comparable under the SWGDOC standard and Ms. Carlson's response was "I have to say everything is comparable."  (Ex. B. 102:6–11.)

Because Ms. Carlson failed to faithfully apply her stated methodology, her testimony lacks the required reliability. Federal courts have excluded her testimony in the past for similar methodological inconsistencies. *See Alcemiga v. Center for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 426 (S.D. NY May 6, 2016) (excluding Ms. Carlson's testimony after noting "striking contradictions between her report and her in court testimony"); *Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, 763 Fed. Appx. 787, 97 (10th Cir. 2019) (noting that "any step that renders the analysis unreliable renders the expert's testimony inadmissible" and "the district court erred when it admitted Carlson's testimony") (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003)).

Finally, Ms. Carlson's testimony contained contradictions regarding the standard she applied. On redirect, Plaintiff's counsel referenced the ANSI/ASB standard 070, and Ms. Carlson testified that her examination met that standard. (Ex. B, Carlson Tr. 130:12 – 132:2.) On recross, when asked to clarify whether she used the SWGDOC standard or the ANSI standard during her examination, she replied: "To my recollection, those were crossing over at that time. So, it certainly could have been..." (Ex. C, Carlson Tr. 136:8-15.) Her testimony also conflicted with her report regarding what she was requested to examine (*compare* Ex. A, at 3 *with* Ex. B, Carlson Tr. 13:6-12).

## CONCLUSION

Defendant respectfully requests that the Court grant its motion and exclude Ms. Carlson.

## REQUESTED RELIEF

Defendant respectfully requests that the Court:

a) Exclude and strike the testimony of Plaintiff's expert, Wendy Carlson, at trial under Rules 26(a)(2), 26(a)(2)(D)(ii), 26(e), and 37(c)(1);

b) Preclude Plaintiff from introducing Ms. Carlson's expert report or any opinions or bases contained therein;

c) Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/      David C. Merkin
David C. Merkin
Assistant Attorney General
Federal Bar No. 12132
Office of the Attorney General
Civil Division Torts Litigation Unit
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6481
dmerkin@oag.maryland.gov

/s/ Leon M. Debes, Jr.
Leon M. Debes, Jr.
Federal Bar No.: 24129
Assistant Attorney General
Office of the Attorney General
Maryland Transit Administration
6 Saint Paul Street, Suite 1200
Baltimore, Maryland 21202
(443) 721-9520
ldebes@mdot.maryland.gov

Counsel for Defendant
Maryland Motor Vehicle Administration

**CERTIFICATE OF SERVICE**

I certify that, on this 4 April 2026, the foregoing and all attachments were served by

CM/ECF on all registered CM/ECF users.

/s/    Leon M. Debes Jr.

Leon M. Debes Jr.,

Assistant Attorney General
