**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **MASHELIA GIBSON,**<br><br>               Plaintiff,<br><br>v.<br><br>**MARYLAND MOTOR**<br>**VEHICLE ADMINISTRATION,**<br><br>               Defendant. | **Civil Action No. 20-cv-3220-ABA** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE AND EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WENDY CARLSON**

Plaintiff, Mashelia Gibson, by and through her undersigned attorney and, pursuant to Fed. R. Civ. P. 26(a)(2) and 37(c)(1), Fed. R. Evid. 103(d) and 702, Local Rule 105, files Plaintiff's Opposition to Defendant's Motion to Strike and Exclude the Testimony of Plaintiff's Expert Wendy Carlson.

## I.      INTRODUCTION

Early in this protracted litigation, Plaintiff engaged Ms. Wendy Carlson, a certified forensic document examiner, based in Rockwall, Texas, to examine the handwritten signatures and markings on Plaintiff's July 1, 2019, mileage log (Plaintiff's Exhibit No. 6) and to render her opinion whether those markings were made by the same person. She submitted her Rule 26(a)(1) report on May 30, 2022. In that report Ms. Carlson compared the markings on line 3 of that mileage log, the entry for June 26, 2019, with other markings on that log.

The Carlson report immediately was forwarded to Defendant's counsel. In early August 2022, Defendant furnished Plaintiff with its expert report, dated August 3, 2022, prepared by Ms. Donna Eisenberg.

1

At no point during the extended discovery period did Defendant notice Ms. Carlson's deposition. Following the March 4, 2026, motions hearing, the parties' counsel discussed conducting a *de bene esse* deposition of Ms. Carlson.[1] That videotaped deposition was held on April 2, 2026. There, for the first time, Defendant's counsel interposed objections to Ms. Carlson's report, a document that has been in Defendant's possession for nearly four years. Defendant's counsel vociferously objected to Ms. Carlson's testimony involving the comparison on the markings on line 3 (the June 26, 2019, entry) with those appearing on lines 2 and 3 (the June 24 and 25, 2019 entries) on the July 1, 2019, mileage log.

Ms. Carlson testified that it was the essence of her engagement to compare those markings to arrive at her conclusions that the markings on line 3 were made by a different person. During her direct examination, Ms. Carlson also testified that the conclusions drawn by Ms. Eisenberg were not consistent with her findings regarding the markings on the July 1, 2019, mileage log. At no point in her deposition did Ms. Carlson vary from or contradict the findings in her May 2022 report. In her testimony, Ms. Carlson confirmed that, in performing her forensic document examination of the mileage log, she relied on Plaintiff's handwriting exemplars provided by her counsel and that she applied the industry standards for examining handwritten documents.[2]

---

[1] Ms. Carlson resides in Rockwall, Texas, a Dallas, Texas suburb, well outside this Court's subpoena power.

[2] Ms. Carlson testified that she followed standards published by the SWGDOC Standard for Examination of Handwritten Items (Version 2013-1) ("SWGDOC Standard") (Doc. 193-3) and the more recent ANSI/ASB Standard 070 – Standard for Examination of Handwritten Items, approved by the ASB Academy Standards Board in April 2022 ("ANSI Standard"). Exhibit 1. Ms. Carlson testified that her analysis was consistent with both the SWGDOC Standard and the ANSI Standard. Exhibit 2, excerpts from the transcript of the deposition of Wendy Carlson ("Carlson Dep. p. _"), p. 10, l. 19-25; p. 11, l. 1-21; p. 104, l. 22-25; p. 104, l. 22-25; p. 105, l. 1-3; p. 136, l. 1-25; p. 137, l. 1-5.

During a short status conference on April 3, 2026, Defendant's counsel informed the Court that Defendant would file the instant Motion that day or on Saturday, April 4, 2026. That motion was filed at 5:45 p.m. on Saturday, April 4, 2026, Easter weekend, three days before the jury trial is scheduled to begin. During her deposition, Ms. Carlson fully explained the bases for her opinions, rebutted the findings contained in the Eisenberg report and was subjected to rigorous cross-examination by Defendant's counsel.

The Court should not countenance Defendant's cynical, inexcusable failure to explore the issues raised in its motion by deposing Ms. Carlson sometime within the intervening nearly four-year period it possessed the Carlson report and springing its motion on the eve of trial.

## II.     ARGUMENT

### A.     Plaintiff Has Not Violated Fed. R. Civ. P. 26(a) and 37.

The Court should reject Defendant's erroneous contention that Plaintiff violated Fed. R. Civ. P. 26(e)(1)(A) and 37. Plaintiff has not violated either Rule.

In conducting any Fed. R. Civ. P. 37(c)(1) exclusion analysis, the Court should consider the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Southern States Rack & Fixture, Inc. v. Sherwin-Williams, Inc.*, 318 F.3d 592, 597 (4th Cir. 2003). Here, Defendant utterly failed to depose Ms. Carlson during the discovery period, there could have no "surprise" to Defendant from Ms. Carlson's testimony and any surprise was cured through Defendant's counsel's cross-examination of Ms. Carlson during her *de bene esse* deposition. Ms. Carlson's deposition testimony will not disrupt the trial.

Finally, Ms. Carlson's deposition testimony was consistent with the methodologies that she applied in conducting her forensic document examination.

First, Ms. Carlson did not violate Rule 26(a)(1)(A), since she gave no testimony during her deposition that required supplementation of her May 2022 report. She testified consistently with the findings in that report. Her testimony comparing line 3 to lines 1 and 2 were part of her methodology in assessing the authorship of line 3. She described her approach as part of her methodology for ascertaining the authorship of line 3. Ms. Carlson described in detail how she did the comparative analysis that supported her conclusions in her report. She offered rebuttal to the Eisenberg report concerning areas that would be well within her purview as a rebuttal witness.

Most significantly, however, Defendant cannot establish any prejudice arising from Ms. Carlson's testimony. Its counsel conducted a lengthy, substantive cross-examination of Ms. Carlson, concerning her report and her rebuttal testimony. Its trial preparation was advanced, rather than hindered by having been afforded the opportunity to cross-examine Ms. Carlson. Defendant now can prepare Ms. Eisenberg's testimony based on Ms. Carlson's testimony. Contrary to Defendant's fevered contentions, Ms. Carlson testified fully to the findings and conclusions contained in her May 2022 report. Further undermining any prejudice claim is the fact that Defendant failed, until several days before trial to depose Ms. Carlson, depriving Ms. Carlson of any opportunity to supplement her expert report before trial. Defendant should not be rewarded for its cynical failure to depose Ms. Carlson in a timely manner then crying wolf when it is too late for Ms. Carlson to supplement her report. Ms. Carlson rendered testimony that was well within the ambit of her May 2022 report and thoroughly analyzed the markings on the July 2019 mileage log. Applying the *Southern States* factors, the Court should find that any "surprise" incident to Ms. Carlson's testimony was cured by Defendant's counsel's having used the full opportunity to cross-

examine Ms. Carlson at her April 2, 2026, *de bene esse* deposition. *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190, 194 (4th Cir. 2017).

Finally, regardless of whether the Court excludes Ms. Carlson's testimony during Plaintiff's case-in-chief, it should permit her *de bene esse* testimony as rebuttal evidence to Ms. Eisenberg's anticipated testimony. Indeed, it would be naïve for Defendant to surmise that Plaintiff would leave its expert's findings and conclusions to go unchallenged. Such testimony is essential to Plaintiff's ability to adduce evidence challenging Ms. Eisenberg's findings. Excluding that testimony will severely damage Plaintiff's ability to provide the jury with complete evidence regarding the mileage log.

**B.**     **<u>Ms. Carlson Reliably Applied the SWGDOC and ANSI Standards in Analyzing the Mileage Log</u>.**

Defendant errs in charging Ms. Carlson with failing to reliably apply the industry standards in conducting her forensic document examination. Motion, pp. 7-8. Ms. Carlson testified that her analysis was consistent with both the SWGDOC and ANSI Standards. She testified that, in conducting her forensic document examination, she appropriately followed both Standards' recommendations for such examinations. Contrary to Defendant's contentions, Ms. Carlson was not dismissive of the SWGDOC Standard, noting that such Standard had been updated and incorporated into the more recent ANSI Standard. Significantly, when shown a portion of the ANSI Standard, §6.4.2., Ms. Carlson noted that, while having an original writing is preferable, the absence of an original writing does not preclude a forensic document examination. Carlson Dep. p. 86, l. 17-25; p.87, l. 1-13.

At no point in his cross-examination did Defendant's counsel force an admission from Ms. Carlson that she violated any mandatory requirement, as defined by either the dated SWGDOC Standard or the more recent ANSI Standard, for a forensic document examination. Ms. Carlson's

testimony reflects instead that she followed both Standards' mandatory requirements and, where appropriate, their recommendations. In fact, the "inconsistency" cited by Defendant (Motion, p. 8) regarding Ms. Carlson's testimony about the Standard that she applied is non-existent. Ms. Carlson testified that, in Spring 2022, when she conducted her examination, portions of the SWGDOC Standard were being incorporated into the ANSI Standards. In April 2022, the ASB Academy Standards Board issued the ASB Standards. Exhibit 1. Ms. Carlson testified that, at the time that she conducted her forensic document review in spring 2022, there was considerable interplay between the Standards.

Defendant has cited no controlling or persuasive authority to exclude Ms. Carlson's testimony. In *Alcemiga v. Cntr. for Investigative Reporting, Inc.*, 185 F. Supp.3d 401, 425-26 (S.D. N.Y. 2016), the court excluded Ms. Carlson's testimony because, unlike here, (1) there were substantial issues regarding the verisimilitude of the known writings and (2) Ms. Carlson, in conducting her forensic document examination, did not apply a verification step (having a second examiner compare the signatures).[3] There is no evidence that either the SWGDOC Standard or the ANSI Standard, however, required a verification step in conducting such analysis. See Doc. 193-1 and Exhibit 1. Both Standards are silent about requiring independent verification. Here, there is no dispute over the veracity of the known and questionable markings on the mileage log. Nor is there any dispute about the genuineness of the known and questionable markings examined by Ms. Carlson. Similarly, Ms. Carlson's findings and opinions were excluded in *Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc..* 763 Fed. Appx. 787, 797 (10th Cir. 2019) (unpublished).

---

[3] In 2016, when Ms. Carlson testified in the *Alcemiga* litigation, apparently there was an industry standard to apply what was known as the ACE-V, an acronym for Analyze, Compare, Evaluate-Verify. There is no evidence that, in 2022, either the SWGDOC Standard or the ANSI Standard required a verification step in conducting forensic document examinations.

There, as in *Alcemiga*, the court found that Ms. Carlson had not established the verification element of the ACE-V test. As stressed above, neither the ANSI Standard, nor the SWGDOC Standard required independent verification when Ms. Carlson performed her forensic document examination in spring 2022. In short, Defendant has not established that Ms. Ms. Carlson's findings and opinions are unreliable because her methodology, findings and opinions conflicted with industry requirements. In contrast, Ms. Carlson testified that she followed both the SWGDOC and ANSI Standards. Both *Alcemiga* and *Crew Tile* are distinguishable and should not be followed.

Defendant's arguments concerning the reliability of Ms. Carlson's methodologies, findings and opinions, at worst, go to the weight that the jury may attach to Ms. Carlson's, as well Ms. Eisenberg's findings. Ms. Carlson's testimony is sufficiently reliable to assist the jury. It should not be excluded, either during presentation of Plaintiff's case-in-chief and on rebuttal. Defendant's Motion should be denied.

## III.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order denying Defendant's Motion.

DATED: APRIL 6, 2026.

Respectfully submitted,

| | |
|---|---|
| _____/S/_____ | _____/S/_____ |
| Nathaniel D. Johnson (MD#14729) | Charles W. Day (MD Bar #14539) |
| Attorney for Plaintiff | Attorney for Plaintiff |
| Employment Law Firm, LLC | The Day Law Practice |
| 3261 Old Washington Road, Suite 2020 | 110 North Washington Street |
| Waldorf, Maryland 20602 | Suite 300-30 |
| (301) 715-8919  (Phone) | Rockville, Maryland 20850 |
| 888-492-9434 (Fax) | (301) 762-2675 (Phone) |
| ndjesquire@gmail.com | (844) 554-5506 (Fax) |
| | billday@daylawpractice.com |

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Strike and Exclude the Testimony of Plaintiff's Expert Wendy Carlson was served, this 6th day of April 2026, upon the counsel of record named below through the Court's CM/ECF electronic case management and filing system:

David C. Merkin, Esq.
Assistant Attorney General
Office of the Attorney General
Motor Vehicle Administration
6601 Ritchie Highway, N.E., Room 200
Glen Burnie, Maryland 21062

Leon M. Debes, Jr., Esq.
Assistant Attorney General
Office of the Attorney General
6 St. Paul Street, Suite 1200
Baltimore, Maryland 21202

_____
Nathaniel D. Johnson